UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIE ZDUNOWSKI,

    Plaintiff,

v.

CHRYSLER GROUP LLC,

    Defendant.

Case No. 14-12213
Honorable Laurie J. Michelson

**OPINION AND ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [15]**

In 2013, Defendant Chrysler Group LLC terminated Plaintiff Marie Zdunowski's employment. Zdunowski claims that Chrysler did so because she was 59 years old or because she was female. Chrysler claims that Zdunowski has no evidence to back her claims. The Court agrees with Chrysler that no genuine issue of material fact exists as to Zdunowski's claims of discrimination and so it will grant Chrysler's motion for summary judgment.

**I.**

**A.**

Because Chrysler has moved for summary judgment, the following fact summary is based on a review of the record in the light most favorable to Zdunowski. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

For the better part of 14 years, Zdunowski worked for Chrysler, primarily as an assembler. (Zdunowski Dep. at 20, 35.) She began working for the automaker in 1999 and, until 2011, had only four issues triggering disciplinary action. (*See* Zdunowski Dep. at 20; Def.'s Mot. Ex. C at Pg ID 136.)

But between February 2011 and February 2012, Zdunowski received 10 disciplinary actions, with increasing severity. (*See* Def.'s Mot. Ex. C at Pg ID 136.) As examples, Zdunowski received one day of disciplinary layoff in February 2011 for being "shy" on heaters and "underhood lamp wire"; she got five days of disciplinary layoff in April 2011 for not installing a "left kickpad"; she received another 10 days in August 2011 for failing to "fully secure tie straps"; and, in January 2012, Zdunowski got 30 days of disciplinary layoff for failing to have her "garnish" ready (which caused operators not to build 12 trucks). (Def.'s Mot. Ex. C at Pg ID 129, 131, 133, 135.)

In March 2012, Chrysler granted Zdunowski's request to move to a different facility. But, just a few months later, Zdunowski received 30 days of disciplinary layoff for producing excessive scrap and threatening others. (Def.'s Mot. Ex. C at Pg ID 136.) And, in April 2013, Zdunowski received a written warning for again producing too much scrap. (*Id.*)

In Zdunowski's opinion, Chrysler's disciplinary actions were unjustified:

> They can't justify any of the things they've said in those disciplining's. They can't go back and pull that and say we have that documented, that we know for a fact that—they can't say that that's a poor quality. They can't say that I'm not pulling that pull string. They can't say that they saw me not pulling, they have that—I was on that job. Okay. I'm sorry, it's just not adding up. You don't harass. You don't—I mean, I mean, nobody else was being harassed. Nobody else was going through this. Nobody else was getting this type of disciplinary measures.

(Zdunowski Dep. at 85; *see also id.* at 82–83.) Zdunowski grieved some of the disciplinary actions through her union but none were resolved in her favor. (*Id.* at 85–86.) Zdunowski thought that she was not receiving union support, citing as an example that a union official inappropriately "pulled [a] grievance out of the grievance system . . . because he said it had no merit." (*Id.* at 44–45, 86.)

2

In the summer of 2013, Zdunowski was working at Station 155 at the Trenton Engine facility. Only one person worked at that station at a time, with the shifts lasting between two and three hours. (*See* Def.'s Mot. Ex. D.) Zdunowski worked at Station 155 for seven of the approximately 75 shifts between June 20 and July 6, 2013. (*See id.*; Dkt. 15, Def.'s Stmt. of Undisputed Facts ¶¶ 16–18; Dkt. 16, Pl.'s Resp. to Stmt. of Undisputed Facts ¶ 18.)

Upon her return from a one-week vacation on July 15, 2013, a foreman informed Zdunowski that she needed to meet with human resources. (Zdunowski Dep. at 71–72, 76.) When she met with human resources later that day, Zdunowski was told that she was being suspended indefinitely pending an investigation into damaged cranks. (*Id.* at 74; *see also id.* at 125.)

According to Chrysler, the investigation revealed that 14 engines had problems with their bearings and that "the misassembled parts came from Station 155 during the time period when [Zdunowski] was working at that station." (Def.'s Stmt. of Undisputed Facts ¶ 23.) In support of this claim, however, Chrysler cites an email that nowhere mentions Station 155 or Zdunowski. (Def.'s Mot. Ex. E.) Zdunowski thus claims that Chrysler's evidence does not show that the defective engines are attributable to her work. (Pl.'s Stmt. of Disputed Facts ¶¶ 20–24.)

In a letter dated July 23, 2013, Chrysler terminated Zdunowski's employment:

> On July 15, 2013 you were suspended pending further investigation for violation of Chrysler Standards of Conduct #9 – "Production of excessive scrap or inferior work".
>
> The investigation is complete and the Company has concluded that your actions were in direct violation of Chrysler Standards of Conduct #9. As such, your suspension that was effective July 15, 2013 has been converted to discharge effective that same date.

(Def.'s Mot. Ex. F.)

**B.**

Count I of Zdunowski's two-count complaint asserts sex discrimination. Although the count is less than clear, Zdunowski apparently alleges that some of the defective engines were attributable to others working at Station 155 and that most of those assemblers were male. (*See* Compl. ¶¶ 9–15.) Yet, says Zdunowski, she was the only one punished. (*Id.* ¶ 16.) She thus claims that Chrysler violated Title VII of the Civil Rights Act of 1964. (*Id.* ¶ 17–19.)

Count II is similar but based on the fact that Zdunowski was 59 years old when she was terminated. (Compl. ¶ 21.) Zdunowski asserts that the majority of the people who rotated through Station 155 at the time in question were younger than her and that Chrysler did not discipline them for conduct like hers. (*Id.* ¶¶ 21–24.) She thus claims that Chrysler violated the Age Discrimination in Employment Act of 1967. (*Id.* ¶¶ 20–25.)

Chrysler moves for summary judgment on both counts. (Dkt. 15, Def.'s Mot.) After thoroughly reviewing the parties' briefs, the Court finds that oral argument will not aid in the resolution of the motion. *See* E.D. Mich. LR 7.1(f)(2).

**II.**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

**III.**

**A.**

The Age Discrimination in Employment Act makes it unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The phrase

"because of" means that "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009).

Chrysler asserts that Zdunowski "clearly has no evidence to suggest that 'but for' her age, her employment would not have been terminated." (Def.'s Mot. at 11.) The company points out that when Zdunowski was asked if she had "any evidence" that her age factored into her termination, she testified, "No, I don't." (Def.'s Mot. at 11; Zdunowski Dep. at 163–64.) Chrysler acknowledges that, during her deposition, Zdunowski implied that Chrysler prefers lower-paid, younger workers to higher-paid, older workers. (*See* Def.'s Mot. at 12.) But Chrysler argues that it is still entitled to summary judgment because Zdunowski lacks any evidence of this preference or that this preference was a factor in her termination. (*See id.*)

The foregoing discharges Chrysler's initial summary-judgment burden. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In particular, the Court agrees with Chrysler that Zdunowski merely speculated that Chrysler had a preference for lower-paid, younger workers:

> Q. . . . With respect to the claims in your lawsuit, did anyone tell you, you know, come out and tell you that your age was a factor in your termination?
>
> A. I can't specifically pinpoint anything. But there have been references made to that, okay. I can't tell you who made them or at what time all right? . . . . And I can't tell you [what the references] were. I mean yes. When you have somebody who's 21 coming in at $14 an hour, and you have somebody who's 58 that's making [$]28.13, who do you want to see excel?

(Zdunowski Dep. at 167–68; *see also id.* at 164.) Zdunowski's question can be answered in a number of ways; perhaps, for example, Chrysler highly values experience and loyalty. As such, Zdunowski merely speculates as to Chrysler's preference. And speculation is not grounds to send a case to a jury. *Shafer Redi-Mix, Inc. v. Chauffeurs, Teamsters & Helpers Local Union #7*, 643

F.3d 473, 477 (6th Cir. 2011). And even if it were, Zdunowski's testimony would not permit a reasonable jury to find that Chrysler's preference was the but-for cause of *her* termination.

Because Chrysler has discharged its initial summary-judgment burden, Zdunowski must come forth with evidence showing that there is a genuine dispute that must be resolved by a jury. *Matsushita*, 475 U.S. at 587. She has not. Her summary-judgment response brief does not even mention age discrimination and, in fact, treats as undisputed Chrysler's assertion that she has no evidence to support an age-discrimination claim. (*Compare* Def.'s Stmt. of Undisputed Facts ¶ 31, *with* Pl.'s Stmt. of Disputed Facts at ¶ 31.) And Zdunowski cannot merely rest on the allegations of her complaint. *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56 advisory committee's note to 1946 amendment ("The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.").

Summary-judgment in favor of Chrysler on Zdunowski's ADEA claim is thus warranted.

**B.**

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]" 42 U.S.C. § 2000e–2(a)(1). A plaintiff can prove discrimination by either direct or circumstantial evidence. *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 648–49 (6th Cir. 2012). Zdunowski has taken the circumstantial route (*see* Pl.'s Resp. at 6–11), and so the Court applies the three-step framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Chrysler says that the Court need not proceed past the first step because Zdunowski cannot establish a *prima facie* case of sex discrimination. (*See* Def.'s Mot. at 9–10.) To establish a *prima facie* case of sex discrimination through circumstantial evidence, Zdunowski must show,

6

among other things, that "she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably." *Regan v. Faurecia Auto. Seating, Inc.*, 679 F.3d 475, 481 (6th Cir. 2012) (internal quotation marks omitted). Chrysler claims that "[Zudnowski] has failed to present any evidence that male employees engaged in similar conduct." (Def.'s Mot. at 9.)

Zdunowski responds that she "has produced the affidavit of Jerry Sanster, a union representative at the Trenton Engine Plant . . . [who] states that there were three male employees that had scrap bearings in the past that were not discharged." (Pl.'s Resp. at 6.) Zdunowski says that she "can make a prima facie case with the affidavit of Jerry Sanster." (*Id.*)

The Court disagrees. As Chrysler points out, the Sanster "affidavit" is not an affidavit for summary-judgment purposes because it is unsigned and unsworn. *See* (Pl.'s Resp. Ex. 1 at Pg ID 166); *Sfakianos v. Shelby Cty. Gov't*, 481 F. App'x 244, 245 (6th Cir. 2012) ("[A]n unsigned affidavit is a contradiction in terms. By definition an affidavit is a sworn statement in writing made under an oath or on affirmation before an authorized officer." (internal quotation marks omitted)); *Nassif Ins. Agency, Inc. v. Civic Prop. & Cas. Co.*, No. 03-2618, 2005 WL 712578, at *3 (6th Cir. Mar. 30, 2005) ("Unsigned affidavits do not comply with Fed. R. Civ. P. 56(e)."). As such, the Court cannot consider Sanster's statements in deciding Chrysler's motion.

Zdunowski's attempt to use Rule 56(d) to get around the fact that Sanster did not sign his "affidavit" is unavailing. (Pl.'s Resp. at 7.) (Counsel actually cites Rule 56(f), but it is apparent that he is referring to Rule 56(d).) Under Rule 56(d), if a party opposing summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," a court may deny the motion or give more time for discovery. As the quoted language indicates, Rule 56(d) does not permit just any showing, but requires a

7

"show[ing] by affidavit or declaration." While Zdunowski's counsel has signed his explanation for why Sanster's signature could not be secured, counsel's statements are neither sworn nor signed under penalty of perjury. So they do not suffice for purposes of Rule 56(d). *Cf. Sfakianos*, 481 F. App'x at 245.[1]

And even if the Court were to treat Sanster's statements as proper Rule 56 evidence, they do not establish that similarly-situated males were treated better than Zdunowski. In relevant part, he says:

> 7. Chrysler has indicated that Marie Zdunowski was responsible for running defective bearings on over 160 engines in one day. This would be almost every engine produced for the day. Since Ms. Zdunowski only worked for three hours other individuals also ran defective bearings that day.
>
> 8. I know of three cases where male employees allegedly placed scratched bearings in engines during assembly.
>
> 9. The male employees were given punishment less than discharge.
>
> 10. Ms. Zdunowski was the only employee terminated for running defective bearings on the engine line B.

(Dkt. 16 at Pg ID 166.) As Chrysler points out, these statements do not satisfy the similarly-situated element because nothing indicates that any of the three (unidentified) male employees had a discipline history similar to Zdunowski's. It is uncontroverted that Zdunowski received discipline on more than 10 occasions prior to her discharge. Indeed, Zdunowski twice received a 30-day disciplinary layoff, and Zdunowski does not dispute Chrysler's claim that "[t]ypically, the next step after a 30 day disciplinary layoff is termination." (Def.'s Mot. at 3 n.3.) Nothing indicates that Chrysler thought that the three male employees were walking on comparably thin

---

[1] Counsel states that Sanster called him and told him about male employees who were treated differently than Zdunowski, that Sanster agreed to sign an affidavit to that effect, that he faxed the affidavit to Sanster, and that Sanster texted back saying that "someone at Chrysler" was preventing him from signing the affidavit. (Pl.'s Resp. Ex. 2 at Pg ID 172–73.)

ice. As such, even taking Sanster's statements as evidence, Zdunowski has not established a *prima facie* case of sex discrimination. *See Parries v. Makino, Inc.*, 148 F. App'x 291, 299 (6th Cir. 2005) ("Farmer was not similarly situated, however, because Farmer did not have the history of disciplinary problems that Parries had and was not subject to a 'last chance' warning."); *Tkacz v. Sears, Roebuck & Co.*, 932 F.2d 969 (table), 1991 WL 71396, at *4 (6th Cir. 1991) ("The most persuasive reason given [by the district court] for the finding that Tkacz and Birk were not similarly situated was Tkacz's rather extensive disciplinary history.").

Chrysler is thus entitled to summary judgment on Zdunowski's Title VII claim.

### IV.

For the reasons given, Chrysler's motion for summary judgment (Dkt. 15) is GRANTED. As this opinion and order resolves this case, a separate judgment will follow.

SO ORDERED.

                          s/Laurie J. Michelson
                          LAURIE J. MICHELSON
                          UNITED STATES DISTRICT JUDGE

Dated: February 17, 2016

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 17, 2016.

                          s/Jane Johnson
                          Case Manager to
                          Honorable Laurie J. Michelson